70 So.2d 592

## PETERSON
#### v.
## CITY CIVIL SERVICE COMMISSION OF NEW ORLEANS et al.

No. 41387.

Jan. 11, 1954.

Rehearing Denied Feb. 15, 1954.

Henry B. Curtis, City Atty., Beuker F. Amann, Asst. City Atty., New Orleans, for defendants-appellants.

Alcide J. Weysham, New Orleans, for plaintiff-appellee.

PONDER, Justice.

This is an appeal from a judgment of the lower court reversing the findings of the Civil Service Commission of the City of New Orleans and ordering the reinstatement of the plaintiff, William J. Peterson, as a patrolman of the Police Department of the City of New Orleans with full reimbursement of pay.

The Superintendent of Police dismissed the plaintiff on September 4, 1952 on the ground that he was not mentally and physically fit to perform police duty. The Civil Service Commission, after hearing the plaintiff's appeal, dismissed the appeal. The plaintiff then brought a mandamus proceeding in the district court seeking to be reinstated as a patrolman with full reimbursement of pay. After hearing, the district judge gave judgment making the writ peremptory and ordering the reinstatement of the plaintiff with full reimbursement of pay. The Superintendent of Police, the Mayor, and the Civil Service Commission of New Orleans have appealed.

It appears that the plaintiff went to the Police Headquarters on March 24, 1952 with five loaded revolvers on his person. Prior to his arrival, his mother had telephoned one of the police officers and told him that the plaintiff was on his way to headquarters armed with several revolvers and that he was upset and might hurt himself or someone else. Upon the plaintiff's arrival and while he was engaged in conversation with Captain Dowie, he was seized and disarmed. He was then taken into the office of one of the policemen and interrogated as to why he had these revolvers on his person. He was not told at that time about the telephone call by his mother. In response to the interrogation, he stated that he just had the revolvers on him and that he had a permit to carry revolvers. Several police officers, as well as the Superintendent of Police, engaged in conversation with the plaintiff thereafter and they all testified that he appeared calm and undisturbed. The Superintendent of Police asked the plaintiff if he was angry about a

purported statement that one of the police officer's wives had allegedly made. The plaintiff stated that he was not angry and discussed the matter in a calm and friendly manner with the officer whose wife supposedly made the statement.

The plaintiff was examined by Dr. A. T. Butterworth, consulting psychiatrist for the Police Department, at the instance of the Superintendent of Police, in order to determine his mental fitness to serve as a police officer. While Dr. Butterworth's report is not in the record, it appears from the evidence that he entertained doubt as to the mental fitness of the plaintiff but that it could not be determined without further examination. Dr. Butterworth testified that the plaintiff was not cooperative and would not consent to a spinal examination.

Dr. Edmund Connely and Dr. P. H. Jones examined the plaintiff at the City Mental Hospital, where he was sent by Dr. Butterworth and Dr. Chetta, and ordered his release on the ground that he had no mental or physical disability. Plaintiff's personal physician testified that plaintiff was completely normal. Dr. Dominic Condie, the police physician, testified to the same effect. Dr. H. R. Unsworth, a psychiatrist, examined the plaintiff on September 15, 1952 and testified that the plaintiff showed no evidence of organic brain disease, that he was neither physically nor mentally ill and was capable of performing police duty.

Many lay witnesses, including Captains of Police, who are well acquainted with the plaintiff, testified as to his good character, both socially and as a police officer. The Civil Service Commission in its report said that none of the Police Captains could suggest any reason why the plaintiff should not continue in the Police Department.

From our appreciation of the reasons given by the Civil Service Commission, their decree was based solely on the ground that it had no authority to substitute its judgment for that of the appointing authority on questions relating to standards of effective service. However, from a careful examination of the reasons given for their findings, it appears that they were of the opinion that the plaintiff was mentally and physically fit to perform the duties of a policeman.

The plaintiff in his testimony states that at the time he was disarmed he did not want to air his family troubles. His wife had just returned the day before from the East Louisiana Hospital for the insane, that she had threatened to do harm to herself and himself and had threatened to kill a neighbor. His explanation of why he had the guns on him was to the effect that immediately after his wife had made these threats he removed all of the guns, knives and razor blades from his home and went to Police Headquarters to see his superior officer to arrange for a few days leave in order that his wife might be operated on.

Dr. Unsworth, an eminent psychiatrist, was of the opinion that the actions of plaintiff were consistent with the normal reaction of an individual who found himself in the situation that plaintiff was in at that time. Dr. Unsworth was familiar with the wife's condition because he had treated her in 1944.

The district judge states in his reasons for judgment that the plaintiff was calm throughout the proceedings and gave a proper explanation of the incident that occurred on March 24, 1952 regarding his actions and reactions under the circumstances.

Under the provisions of LSA–R.S. 33:-2424, a regular employee in the classified service who has been dismissed has the right of a hearing before the Civil Service Commission after which hearing the Commission shall approve or disapprove of the dismissal.

The appellants have cited a list of cases, none of which involve the Civil Service law or the Civil Service Commission, which affords us no aid in the disposition of this case. We know of no case in the jurisprudence of this State wherein the court was prohibited or restricted from considering all of the facts in order to determine whether or not a Civil Service Commission acted properly and gave the required protection guaranteed to an employee under the provisions of LSA–R.S. 33:2424. This provision of the Revised Statutes not only provides that an employee is entitled to a hearing to determine the reasonableness of his dismissal but makes it the duty of the Commission to hear the evidence and either approve or disapprove the action taken by the appointing authority. To say that the Commission is powerless to supplement their judgment for that of the appointing authority would be equivalent to taking away the employee's right to a hearing and an appeal.

A careful review of the testimony convinces us that the plaintiff is mentally and physically fit to perform his duties as a police officer and that the judgment of the lower court should be affirmed.

For the reasons assigned, the judgment is affirmed at appellants' cost.